AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California


LODGED
CLERK, U.S. DISTRICT COURT
8/11/25
CENTRAL DISTRICT OF CALIFORNIA
BY: ___MRV___ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
August 11, 2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CLD___ DEPUTY

United States of America

v.

Denilson Yeyson Cajbon-Gomez,

Defendant

Case No.   2:25-mj-04924-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of May 25, 2025 in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(5) | Unlawful alien in possession of a firearm |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Ani Ghaltakhchyan
*Complainant's signature*

Ani Ghaltakhchyan, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: August 11, 2025

*Judge's signature*

City and state: Los Angeles, California

Hon. Alka Sagar, U.S. Magistrate Judge
*Printed name and title*

AUSA: Neil P. Thakor (x6595)

**AFFIDAVIT**

I, Ani Ghaltakhchyan, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against and arrest warrant for Denilson Yeyson CAJBON-Gomez ("CAJBON") for a violation of 18 U.S.C. § 922(g)(5): Alien in Possession of a Firearm.

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

3. I have been employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") since June of 2021. I am currently assigned to the ATF Glendale Field Office in Glendale, California. I am a graduate of the Criminal Investigator Training Program and the ATF Special Agent Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training in federal laws and regulations. I regularly refer to these laws and regulations

during the course of my duties, and have participated in investigations, and the execution of warrants for violations of these laws and regulations.

4. I am currently assigned to the Homeland Security Investigations ("HSI") Integrated Operations Group Task Force ("Task Force"). As part of this Task Force, I investigate various immigration crimes with Department of Homeland Security ("DHS") agents and analysts, including from HSI and Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations. As a result of my collaboration with these DHS employees on this Task Force, I am familiar with DHS databases that are used to identify individuals who are subject to prosecution for immigration crimes and other related crimes.

### III. STATEMENT OF PROBABLE CAUSE

5. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

**A. Los Angeles Police Department (LAPD) North Hollywood Division Arrests CAJBON:**

6. According to an LAPD report, on or about May 25, 2025, at approximately 8:30pm, Officers Ramirez and De La Mora, were conducting extra patrol in the area of Vanowen Street and Fulton Avenue, due to a recent uptick in the amount of violent crime and illegal drug activity in the area.

7. According to Officer De La Mora's report, while traveling eastbound through the parking lot of the liquor store located 13324 Vanowen Street, an area known for frequent

congregation of MS-13 gang members, Officers Ramirez and De La Mora observed a male suspect, later identified as CAJBON, standing at the entrance of the liquor store. Upon making eye contact with the officers, the suspect immediately bladed his body away from their direction and attempted to conceal himself behind a blue display shelf located adjacent to the door. CAJBON was wearing oversized, baggy clothing. Based on Officer De La Mora's training and experience, individuals involved in gang activity often wear such clothing to conceal firearms or other weapons, making detection by law enforcement more difficult.

8. Based on CAJBON's facial features and physical stature, officers assessed that the individual appeared to be under the age of 18. Officers De La Mora and Ramirez believed the suspect to be a juvenile potentially in violation of Los Angeles Municipal Code 45.03 – Curfew Violation. In response, Officers De La Mora and Ramirez repositioned their police vehicle in order to monitor CAJBON and prepare to conduct a pedestrian stop upon his exit from the liquor store. A short time later, Officers observed CAJBON exit the store accompanied by an additional male individual, later identified as M.R.D.

9. According to the LAPD report, as the Officers approached in their police vehicle, CAJBON looked at their direction and exhibited a visibly startled reaction. At that moment, Officers observed CAJBON grab his waistband with both hands in a manner consistent with attempting to secure or support a heavy object, which based on Officer's De La Mora's and Ramirez's training and experience, is indicative of someone

concealing a firearm. CAJBON then quickly turned and ran back into the liquor store.

10. According to Officer De La Mora's report, due to the recent increase in documented gang-related activity, narcotic sales, and assaults with a deadly weapon in and around this location, Officers De La Mora and Ramirez believed the suspect was attempting to secure a firearm concealed in his waistband as he fled back into the store. Based on Officers De La Mora's and Ramirez's training and experience, individuals who are running or moving quickly while carrying a firearm in their waistband or pocket often instinctively grab onto the weapon to prevent it from falling or becoming dislodged. This behavior is consistent with what officers observed in CAJBON's actions.

11. Officers De La Mora and Ramirez immediately exited their police vehicle and approached the entrance to the liquor store. Officer De La Mora then observed CAJBON standing in the first aisle and gave him commands and took him into custody.

12. While conducting a pat-down of the suspect's left leg for weapons, Officer De La Mora felt a hard L-shaped object consistent with the shape of a firearm. Upon lifting CAJBON's pant leg, a black firearm fell to the ground. Officer Ramirez recovered the firearm, rendered the firearm safe and discovered no round in the chamber. Officer Ramirez then removed the magazine which was loaded with five .45mm live rounds. While at the scene officers discovered that CAJBON was not a minor and had recently turned 18 years old in March of 2025.

13. According to Officer De La Mora's report, he then conducted a follow-up investigation at the liquor store and reviewed video surveillance footage. The footage captured CAJBON running into the store while placing both hands on his waistband area. CAJBON then turned his back to the camera, briefly obscuring visibility. He subsequently turned to face the camera and could be seen looking downward while simultaneously reaching at his waistband. Shortly thereafter, CAJBON was taken into custody.

14. According to the LAPD report, CAJBON was arrested for possession of a loaded firearm on person and was transported to North Hollywood Station for pre-booking.

15. While at the station LAPD Officer Ramirez read CAJBON his Miranda Rights in Spanish and CAJBON waived his rights. According to Officer De La Mora's report, CAJBON provided a statement in Spanish and said (in substance and summary) that he purchased the gun the officers had seized at the liquor store solely for protection.

B. **Defendant is a Citizen of Guatemala who is Illegally Present in the United States**

16. On or about July 16, 2025, while working on a joint investigation with ATF Task Force Officers, I reviewed a LAPD arrest report related to the possession of a firearm by CAJBON. Based on the review of the report, CAJBON stated (in substance and summary) that he immigrated to the United States from Guatemala approximately four years ago, accompanied by his father and uncle. Based on the information CAJBON provided LAPD

officers with, I reached out to HSI Special Agent Henry Blackwell to determine the validity of the statements made by CAJBON related to his immigration status. HSI SA Henry Blackwell learned the following regarding the defendant's immigration status:

17. The Defendant is a citizen of Guatemala who illegally entered the U.S. as a family unit on or about August 19, 2018. Defendant was apprehended by U.S. Border Patrol ("USBP") and was served with a Notice to Appear and processed for removal. Following the issuance of the notice to appear, the defendant, and/or his guardian, submitted an application for asylum. On October 1, 2019, an immigration judge ordered the defendant removed from the U.S. to Guatemala, and the asylum application was denied. The defendant, and/or his guardian, filed an appeal of the immigration judge's order. On October 26, 2022, the Board of Immigration Appeals remanded the case to the immigration judge for further proceedings. Then on February 24, 2023, an immigration judge dismissed the removal proceedings without prejudice.

18. HSI SA Blackwell examined DHS databases and found no record of the defendant leaving the U.S. following his initial order of removal, and no record of the defendant obtaining legal status to remain in the U.S. after the removal proceedings were dismissed, as such the defendant was illegally present in the U.S. at the time he possessed the firearm and five rounds of ammunition.

### C.  Interstate Nexus

19.  On or about July 14, 2025, ATF SA David Gonzalez, who is an ATF Firearms and Ammunition Interstate Nexus Expert, examined pictures of one firearm and five rounds of ammunition recovered from CAJBON's arrest on May 25, 2025. SA Gonzalez examined photographs of the following firearm: one Kimber Custom LW model, .45 caliber firearm bearing serial number K665679 and for the following ammunition, two rounds of Speer .45 caliber ammunition with headstamp "Speer"; three rounds of .45 auto caliber ammunition with headstamp "Ruger" were all manufactured outside of the state of California. SA Gonzalez determined that for the firearm and ammunition to have been recovered in California, they had to have moved in interstate or foreign commerce.

### D.  CAJBON Identification Confirmed

20.  On or about June 10, 2025, I reviewed body worn camera footage from CAJBON's arrest on May 25, 2025, and booking photos provided by California Department of Motor Vehicles, and I compared them to the photographs maintained by DHS databases for CAJBON. After reviewing all the photographs and the body worn camera videos, I concluded that the individual from May 25, 2025, arrest is the same individual as shown in DHS databases. As seen below, the two photographs on the left, and in the middle, are booking photographs of CAJBON from May and July 2025. The photograph on the right is a photograph of CAJBON in DHS databases.

  

## IV. CONCLUSION

21. For all of the reasons described above, there is probable cause to believe that Defendant has committed a violation of 18 U.S.C. § 922(g)(5): Alien in Possession of a Firearm.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 11th day of August 2025.

_____
HONORABLE ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE